## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

**CIVIL ACTION NO. 25-176-DLB**

**WILSON I. ICHICH XO**                                               **PETITIONER**


**v.**                      **MEMORANDUM OPINION AND ORDER**


**JAMES A. DALEY, et al.,**                                    **RESPONDENTS**

* * * * * * * * * *

## I.      INTRODUCTION

This matter is before the Court on Petitioner Wilson Ichich Xo's Petition for Writ of Habeas Corpus (Doc. # 1).  Respondents[1] having filed their Responses (Docs. # 7 and 8), and Petitioner having filed his Reply (Doc. # 9), this matter is now ripe for review.  For the reasons that follow, the Court will **grant** the Petition.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Wilson Ichich Xo is a native and citizen of Guatemala who has lived in the United States for over three years.  (Doc. # 1 ¶ 2).  Ichich Xo entered the United States without inspection on April 11, 2022 at the age of seventeen.  (*Id.*).  Because Ichich Xo entered the United States as an unaccompanied minor, he was placed in the custody of

---

[1]      Petitioner files this action against Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"); Pamela Bondi, U.S. Attorney General; and Todd M. Lyons, Acting Director, US Immigration and Customs Enforcement ("ICE"), in their official capacities, respectively (collectively, "Respondents").  Petitioner additionally filed this action against James A. Daley, Jailer, Campbell County Detention Center.  Respondent Daley filed his Response, arguing that he is not Petitioner's legal or immediate custodian.  (Doc. # 7).  This is not disputed by Petitioner, and therefore, the Court will address only the Response filed by the other listed Respondents. (*See* Doc. # 9).

1

the U.S. Department of Health and Human Services' ("HHS") Office of Refugee Resettlement ("ORR").  (Doc. # 9-3).  On April 19, 2022—eight days after he entered the United States—ORR released Ichich Xo to the custody of his brother in Chicago.  (*Id.*).  Although Ichich Xo was served with a Notice to Appear for removal proceedings before an Immigration Judge ("IJ") shortly after his entry into the United States, the Notice did not include the date or time on which such proceedings were to take place.  (Doc. # 1-5).  However, more than two years later—on July 23, 2024, the Department of Homeland Security ("DHS") served Ichich Xo with a superseding Notice to Appear before an IJ in Chicago on November 2, 2027.  (Doc. # 9-1).

On October 23, 2025 Ichich Xo was arrested by ICE.  (Doc. # 1 ¶ 1).  He is currently in custody at the Campbell County Detention Center ("CCDC").  (Doc. # 1 ¶ 8).  Ichich Xo remains in custody at CCDC pending his master calendar hearing before an IJ, which is scheduled for December 19, 2025.  (Doc. # 9 at 1).

On November 3, 2025, Ichich Xo, through counsel, filed the instant petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  (Doc. # 1).  In his Petition, Ichich Xo claims that he is being wrongly detained at CCDC and requests that the Court order his immediate release.  (*Id.* ¶¶ 5, 31).  On November 14, 2025, the Court directed Respondents to respond to the Petition.  (Doc. # 6).  Respondents having filed their Responses (Docs. # 7 and 8), and Ichich Xo having filed his Reply (Doc. # 9), this matter is ripe for the Court's review.

## III.    ANALYSIS

In his Petition, Ichich Xo argues that his detention violates the Immigration and Nationality Act ("INA") and deprives him of his right to due process under the Fifth

Amendment. (Doc. # 1 ¶ 31). Specifically, Ichich Xo argues that he is being held for an unreasonable period of time in violation of 8 U.S.C. § 1231(a)(6).[2] (*Id.* ¶¶ 32-33). Respondents do not address this section of the INA in their Response. Rather, Respondents argue that "[t]his matter turns on whether [8 U.S.C.] § 1225 of § 1226 apply to Petitioner." (Doc. # 8 at 8). As a preliminary matter, then, the Court must determine which of these statutory provisions applies to Ichich Xo.

Under the INA, an alien who has been served with a Notice to Appear in conformity with 8 U.S.C. § 1229(a) will have a "hearing before an immigration judge to determine whether he is inadmissible or deportable, and therefore subject to removal." *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1229a(a)(1)). If, after this hearing, the IJ determines that the alien is inadmissible or deportable, the IJ will issue an order of removal. *Id.* (citing 8 U.S.C. § 1229a(c)(5)).

---

[2]    In his Reply, Ichich Xo also appears to argue that his immediate release from custody is required by the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). The TVPRA provides, in pertinent part that "[a]n asylum officer (as defined in section 1225(b)(1)(E) of this title) shall have initial jurisdiction over any asylum application filed by an unaccompanied alien child (as defined in section 279(g) of Title 6), regardless of whether filed in accordance with this section or section 1225(b) of this title." 8 U.S.C. § 1158(b)(3)(C). Ichich Xo argues that "requiring Petitioner, an unaccompanied alien child, to litigate his asylum claim . . . while detained directly contravenes the procedural protections established by the TVPRA." (Doc. # 9 at 3).

However, Ichich Xo is not an "unaccompanied alien child (as defined in section 279(g) of Title 6)." 8 U.S.C. § 1158(b)(3)(C). Under that section, the term "unaccompanied alien child" means a child who "(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom – (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2). Ichich Xo turned eighteen on October 27, 2022, and is presently twenty-one years old. (Doc. # 9-3). Thus, under the terms of the TVPRA, Ichich Xo is not an "unaccompanied alien child" entitled to the asylum procedure laid out in 8 U.S.C. § 1158(b)(3)(C). Furthermore, although Petitioner claims that he "intends to file his application for asylum" at some point prior to his master calendar hearing, he has yet to actually seek asylum. (*Id.* at 1). Accordingly, the Court is not persuaded by Ichich Xo's argument that his present detention is unlawful because it runs afoul of the "adjudicatory framework as required by 8 U.S.C. § 1158(b)(3)(C)." (*Id.* at 3).

**A. Section 1231 is inapplicable to Petitioner's current detention**

Once an alien has been ordered removed, "DHS must physically remove him from the United States within a 90-day 'removal period.'" *Id.* (citing 8 U.S.C. § 1231(a)(1)(A)). During this period, detention is mandatory. 8 U.S.C. § 1231(a)(2). However, under § 1231(a)(6), certain aliens may be detained beyond the ninety-day removal period in the event that DHS is unable to effectuate physical removal. Ichich Xo points the Court to § 1231(a)(6) and argues that his "continued detention has become unreasonable because his removal is not reasonably foreseeable. Therefore, his continued detention violates 8 U.S.C. § 1231(a)(6), and he must be immediately released." (Doc. # 1 ¶ 33). In making this argument, Ichich Xo highlights *Zadvydas v. Davis*, in which the Supreme Court "read an implicit limitation into [§ 1231(a)(6)]." 533 U.S. 678, 689 (2001). Under this limitation, an alien's post-removal detention may not exceed the "period reasonably necessary to bring about that alien's removal from the United States." *Id.*

In his petition, Ichich Xo alleges that "the U.S. Department of Homeland Security (DHS) has not placed Petitioner in removal proceedings."[3] (Doc. # 1 ¶ 3). Thus, Ichich Xo is not presently subject to a removal order. Accordingly, by his own admission, Ichich Xo is not an "alien ordered removed" to whom § 1231 applies. *See Zadvydas*, 533 U.S. at 682 (noting that 8 U.S.C. § 1231 applies after the entry of a final order of removal); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("The section at issue here, 8 U.S.C. § 1231(a), governs the detention, release, and removal of individuals 'ordered

---

[3] Despite this allegation, the Notice to Appear attached to the Petition (Doc. # 1-5) indicates that Ichich Xo was placed in removal proceedings on April 12, 2022. Although the initial Notice to Appear (Doc. # 1-5) did not contain a time or date for such proceedings, Ichich Xo was served with a second, superseding Notice to Appear before an IJ on July 23, 2024—more than a year prior to his arrest in October of 2025. (Doc. # 9-1 at 1-2). Accordingly, the Parties now agree that Ichich Xo is being detained pending removal proceedings. (*See* Doc. # 8 at 2; Doc. # 9 at 1).

removed.'"); *Martinez v. Larose*, 968 F.3d 555, 560 (6th Cir. 2020) (observing that §

1231(a) applies to aliens who "ha[ve] already been adjudged to be removable") (citation

omitted).  Because § 1231 does not apply to Ichich Xo, the Court rejects Ichich Xo's

invitation to find that his continued detention violates that provision.

### B.  Relevant Framework

Having held that § 1231 does not apply to Ichich Xo, the Court will identify the

appropriate provisions of the INA and determine whether Ichich Xo's detention complies

with the relevant statutory and constitutional demands.

At its core, habeas provides "a remedy for unlawful executive detention" *Munaf v.*

*Geren*, 553 U.S. 674, 693 (2008), available to "every individual detained within the United

States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  The "typical remedy for such

detention is, of course, release."  *Munaf*, 553 U.S. at 693.  Such relief "may be granted

by the . . . district courts . . . within their respective jurisdictions." 28 U.S.C. 2241(a).  The

Supreme Court has recognized that habeas relief extends to noncitizens.  *See Rasul v.*

*Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in

federal custody in violation of the laws of the United States . . . Section 2241, by its terms,

requires nothing more.").  Enacted in 1952, the INA consolidated previous immigration

and nationality laws and now contains "many of the most important provisions of

immigration law."  U.S. Citizenship and Immigration Services, *Immigration and Nationality*

*Act* (July 10, 2019), https://www.uscis.gov/laws-and-policy/legislation/immigration-and-

nationality-act#:~:text=The%20Immigration%20and%20Nationality%20Act,

the%20U.S.%20House%20of%20Representatives.

5

Ichich Xo is a noncitizen who has been placed in removal proceedings. (Doc. # 9 at 1). The INA contains four provisions that grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). *See Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023). As discussed above, § 1231(a) applies to noncitizens who have been "ordered removed." *Arteaga-Martinez*, 596 U.S. at 578 ("The section at issue here, 8 U.S.C. § 1231(a) governs the detention, release, and removal of individuals 'ordered removed.'"). Because Petitioner has not yet been ordered removed, section 1231 does not apply to him. Rather, as Respondents correctly note, "[t]his matter turns on whether § 1225 or § 1226 apply to Petitioner." (Doc. # 8 at 8). The Court will summarize these two statutes, which govern detention of noncitizens pending removal proceedings.

The first statute, 8 U.S.C. § 1225 titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" states, in pertinent part,

**(b)    Inspection of applicants for admission**

**(2)    Inspection of other aliens**

**(A)    In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title.

8 U.S.C. § 1225(b)(2)(A). Important to note, for purposes of this provision, "an alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1).

6

The second provision at issue, 8 U.S.C. § 1226, titled "Apprehension and detention of aliens" reads

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1)    May continue to detain the arrested alien; and

(2)    May release the alien on—

(A)    Bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

8 U.S.C. § 1226(a).

Section 1226(c) of the INA was amended by Congress in January 2025 with the enactment of the Laken Riley Act, which added a new subsection mandating detention in certain circumstances. Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025). The amendment added a two-step process, in which the Attorney General must detain a noncitizen if

(1) they are inadmissible because they are in the United States without being admitted or paroled, obtained documents or admission through misrepresentation or fraud, or lacks valid documentation and

(2) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

*Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *3 (W.D. Ky. Sep. 19, 2025) (quoting U.S.C. §§ 1226(c)(1)(E)(i)-(ii)).

The distinction between 8 U.S.C. §§ 1225 and 1226 is relevant to Ichich Xo's Petition. Pursuant to 8 U.S.C. § 1226(a), noncitizens who are arrested and detained have the right to request a bond hearing before an Immigration Judge. Conversely, under 8

U.S.C. § 1225(b)(2)(A), all aliens deemed to be applicants for admission *must* be detained. As noted *supra*, Ichich Xo, a noncitizen who has lived in the United States for more than three years, has now been detained by ICE and is being held at the Campbell County Detention Center pending removal proceedings. The question, then, is whether Petitioner must be detained without a hearing under § 1225(b)(2), or whether he has the right to request a bond hearing pursuant to § 1226.[4]

### C. Statutory Interpretation

The parties agree on the basic facts of this case. Rather, the central disagreement concerns which statutory provision applies to Ichich Xo. Thus, the issue before the Court is one of statutory interpretation. In interpreting statutes, district courts must "use every tool at their disposal to determine the best reading of the statute." *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 400 (2024). Statutes must be given their "ordinary, contemporary, common meaning" *Walters v. Metro Edu. Enters., Inc.*, 519 U.S. 202, 207 (1997), while also being read "in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012).

The Court first turns to the plain language of the statute. This inquiry begins by looking at the first words one may read—the title. A "[c]ourt gives each and every word meaning, and this includes the title." *Barrera*, 2025 WL 2690565, at *4. While section headings are not dispositive, "they are instructive and provide the Court with the necessary assurance that it is at least applying the right part of the statute in a given

---

[4] The Court notes that the matter before this Court is *not* whether the executive branch has the authority to direct ICE/DHS to detain and deport noncitizens. The question before the Court is a more narrow one, to wit, whether those noncitizens—specifically Petitioner Ichich Xo—are entitled to request a bond hearing before an Immigration Judge prior to their removal hearing pursuant to 8 U.S.C. § 1226(a) or must be mandatorily detained pursuant to 8 U.S.C. § 1125(b)(2)(A).

circumstance." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025); see also *id*. ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (quoting in a parenthetical *Dubin v. United States*, 599 U.S. 110, 120-21 (2023))).  "[A] title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest."  *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring).

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for a hearing[.]"  Section 1226 is titled "apprehension and detention of aliens" with a focus on "arrest, detention, and release[.]"  Thus, the text of the titles indicate that § 1225 governs "arriving" noncitizens who are presently "seeking admission" into the United States,[5]  while § 1226 focuses on the apprehension and detention of those noncitizens already present in the country.  *See Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *7 (W.D. Ky. Nov. 27, 2025) ("The added word of 'arriving' supports the notion that the statute governs 'arriving' noncitizens, not those present already.").

Section 1225(a)(1) states that an "applicant for admission" is "an alien present in the United States who has not been admitted or who arrives in the United States."  Under § 1225(b)(2)(A) any applicant for admission who is "seeking admission" and "is not clearly and beyond a doubt entitled to be admitted" must be detained.  The analysis then, is twofold.  For a noncitizen to be mandatorily detained under § 1225(b)(2)(A), they must be

---

[5]      This is supported by the text of § 1225, which focuses on limited and specific methods of entry, for example, via "crewman" or "stowaways," leading to the conclusion that "Section 1225 is much more limited in scope than the United States asserts."  *Barrera*, 2025 WL 2690565, at *4.

an applicant for admission who is also seeking admission. Other district courts have acknowledged that this "question is puzzling at first blush. How can an 'applicant for admission' not 'seek admission?'" *J.G.O. v. Francis*, No. 25-cv-7233, 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025). Such an oddity is explained by looking to the statutory definition. To be an applicant for admission, "[a]ll that's needed is presence without admission—in other words, it applies to the great number of undocumented immigrants who currently live here." *Id.* By contrast, seeking admission "might mean something more than that—some active desire or process toward admission." *Id.* Because Ichich Xo is neither an "arriving alien" nor "seeking admission" into the United States § 1225(b)(2) does not appear to apply to him.

Respondents disagree with this reading. They take the position that for a noncitizen to qualify as an "applicant for admission" who is "seeking admission" one must merely be (1) present in the United States, and (2) not be admitted by an immigration officer. (Doc. # 8 at 8). Thus, Respondents contend that despite Ichich Xo's continued residence in the United States for over three years he is still "seeking admission" because any noncitizen who is "[s]imply . . . in the United States without having been admitted . . . is actively seeking admission into the United States." (*Id*. at 10). Respondents' interpretation of § 1225(b)(2)(A), therefore, calls for mandatory detention of every noncitizen present in the United States who has not been lawfully admitted. The Court finds this interpretation much too broad. *See Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("[A]ccepting Respondents' one-size-fits-all application of 1225(b)(2) to all aliens, with no distinctions, would violate fundamental canons of statutory construction.").

10

In reaching this conclusion, Respondents misconstrue, or ignore entirely, the word "seeking" in the phrase "seeking admission." Respondents argue that a noncitizen who is merely present in the United States is "actively seeking admission." (Doc. # 8 at 10). The use of the present progressive term "seeking" "implies action." *Barrera*, 2025 WL 2690565 at *4; *see also Diaz v. Marinez*, 792 F. Supp. 3d. 211, 218 (D. Mass. 2025) ("[T]he phrase 'seeking admission[,]' [though] undefined in the statute[,] [] necessarily implies some sort of present-tense action."); *Edahi*, 2025 WL 3466682 at *8 ("Seeking means 'to go in search of' and is synonymous with 'pursue.'" (quoting WEBSTER'S DICTIONARY (11th ed. 2024))). Furthermore, the INA defines the term "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Given that the word "entry" is left undefined by the INA, courts interpret it according to its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (internal quotations omitted); *see also Gustafson v. Alloyed Co., Inc.*, 513 U.S. 561, 585 (1995) (Thomas, J., dissenting) ("The canon that we construe a statutory term in accordance with its ordinary or natural meaning applies only in the absence of a statutory definition." (cleaned up)). "That meaning is 'entering into . . . (a country),' which is '[t]o come or go in.'" *J.G.O.*, 2025 WL 3040142, at *3 (quoting Entry, OXFORD ENGLISH DICTIONARY (2d ed. 1989); Enter, OXFORD ENGLISH DICTIONARY (2d ed. 1989)).

Thus, it cannot be said that Ichich Xo, a noncitizen who has resided in the United States for over three years is "actively seeking admission*." See id.* ("'[S]eeking admission' requires an alien to continue to want to go into the country. The problem . . . is that [the

petitioner] is already here; you can't go into a place where you already are.").  Numerous district courts have come to the same conclusion.  *See Ramirez v. Lewis, et al.*, No. 4:25-cv-143, 2025 WL 3553676, at *7 (W.D. Ky. Dec. 11, 2025) ("But there is simply no logical way to interpret Ramirez as 'arriving' or 'seeking admission' as he has lived within the United States for the past twenty years."); *Barrera*, 2025 WL 2690565, at *4 ("Noncitizens who are present in the country for years, like [petitioner] who has been here 20 years, are not actively 'seeking admission.'"); *Lopez-Campos*, 2025 WL 2496379, at *7 ("There is no logical interpretation that would find that Lopez-Campos was actively 'seeking admission' after having resided here, albeit unlawfully, for twenty-six years."); *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025) ("In agreement with other district courts, this court rejects Respondents' expanded reading of 1225(b)(2) and the term "seeking admission.").  Moreover, to adopt Respondents' interpretation of the verb "seeking" would render the phrase "seeking admission" "mere surplusage by equating it to 'applicant for admission.'"  *Ochoa Ochoa*, 2025 WL 2938779, at *6; *see also J.G.O.*, 2025 WL 3040142, at *3 ("[T]his is just another example of the government's construction inviting surplusage into the statute. That Congress chose to include this additional phrase—'seeking admission' . . . suggests that it must mean something distinct.").  The Court declines to adopt such an expansive reading of § 1225(b)(2)(A).

The Court now turns to the plain language of § 1226, which controls the "apprehension and detention of aliens."  Section 1226(a) permits a bond hearing if an "alien" who was "arrested and detained" on a "warrant issued by the Attorney General" remains in detention "pending a decision on whether the alien is to be removed from the

12

United States." The plain meaning of the statute is clear and applicable to Ichich Xo—an alien who was arrested and detained by ICE and who remains detained pending removal proceedings. (Doc. # 9 at 1). This conclusion is further bolstered by the record.

The July 16, 2024 Notice to Appear issued for Ichich Xo by DHS checked the box labeled "You are an alien *present* in the United States who has not been admitted or paroled" rather than checking the box labeled "arriving alien." (Doc. # 9-1 at 1) (emphasis added). This supports this Court's conclusion and reaffirms the Supreme Court's determination in *Jennings v. Rodriguez*, that § 1226(a) applies to aliens already present in the United States, while § 1225(b)(2)(A) applies to arriving aliens. 583 U.S. 281, 298, 303 (2018). The Respondents' new post hoc position is simply "impermissible.*" Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22 (2020) (holding that "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations").

Most compelling for this Court is the addition of the Laken Riley Act, signed into law in January 2025. The Laken Riley Act, which was incorporated into § 1226(c), provides that noncitizens who have been charged with, convicted of, or admitted to committing various listed crimes, are subject to mandatory detention. 8 U.S.C. § 1226(c). If, as Respondents argue, Congress had intended for § 1225 to govern all noncitizens who are present in the country, regardless of when or where they were detained, then why did Congress even bother passing that legislation? If Respondents' reading of § 1225 is correct, then the addition of the Laken Riley Act would be superfluous. The Laken Riley Act added a mandatory detention requirement to "an otherwise discretionary Section." *Barrera*, 2025 WL 2690565, at *4. As other courts have noted,

> [i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless and this Court, too, 'will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).

*Lopez-Campos*, 2025 WL 2496379, at *8 (quoting *Maldonado*, 2025 WL 237441, at *12); see also *id.* ("Respondents' interpretation of the statutes would render [the Laken Riley Act] superfluous); *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) ("Such an interpretation, which would largely nullify a statute Congress enacted this very year, must be rejected."); *Martinez v. Hyde*, 792 F. Supp. 3d. 211, 221 (D. Mass. 2025) ("[I]f, as the Government argue[s] ... a non-citizen's inadmissibility were alone already sufficient to mandate detention under section 1225(b)(2)(A), then the 2025 amendment would have no effect. This is a presumptively dubious result."); *Selvin Adonay E.M. v. Noem et al.*, No. 25-cv-3975, 2025 WL 3157839, at *6 (D. Minn. Nov. 12, 2025) ("the presumption against superfluity is at its strongest because the Court is interpreting two parts of the same statutory scheme, and Congress even amended the statutory scheme this year when it passed the Laken Riley Act.").

This Court agrees with its sister courts.  Respondents fail to elaborate when, if § 1225(b)(2) applies to every single noncitizen's detention proceeding, § 1226 would ever, if at all, come into play.  The Court finds it difficult to conceive of a situation in which Congress would enact an insignificant superfluous statute for no other reason than to add words to the page.  *See Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon

against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

The Court acknowledges that Respondents cite a string of nonbinding district court decisions supporting its interpretation.  For example, Respondents cite to *Olalde v. Noem et al.*, a case from the Eastern District of Missouri.  (Doc. # 8 at 9).  There, the court agreed with the government's interpretation of § 1225(b)(2)(A), concluding that the petitioner was an applicant for admission because he was present in the United States and had not been admitted.  No. 1:25-cv-00168-JMD, 2025 WL 3131942, at *1 (E.D. Mo. Nov. 10, 2025).  In its analysis, the court looked not towards whether the petitioner was "seeking admission" but whether he was an "applicant for admission."  *Id*. at *2.  Its reasoning rested in part on the conclusion that it "makes no sense to describe an active applicant for admission as somebody who is not 'seeking' admission."  *Id*. at *3.  Yet, as the Court discussed above, "to be detained pursuant to Section 1225(b)(2)(A), that is precisely what the text requires."  *Edahi*, 2025 WL 3466682, at *12.  "Holding as *Olalde* does would require the Court to ignore the plain statutory text.  But Courts must give effect to every word in the statute. . . In ignoring the very words of section 1225(b)(2)(A) *Olalde* defies this principle."  *Id*.

Respondents also cite *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025) and *Sandoval v. Acuna*, No. 6:25-cv-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025).  (Doc. # 8 at 8-9).  However, the Court is no more persuaded by either of these decisions.  Specifically, the Court is unconvinced because neither *Rojas* nor *Sandoval* concluded that the recent addition of the Laken Riley Act would be rendered superfluous if § 1225(b)(2)(A) required mandatory detention of all noncitizens.  *See Rojas*,

15

2025 WL 3033967, at *9 ("[L]egislation passed in 2025 has little bearing on the meaning of legislation enacted in 1996. Indeed, nothing in the Laken Riley Act suggests any Congressional thoughts concerning the issues presented in this case."); *Sandoval*, 2025 WL 3048926, at *5 ("The statutory scheme of the INA does not render these two provisions mutually exclusive, and there are many other categories of aliens to whom § 1226(a) is applicable, but not § 1225(b)(2)."). This Court, and many others, disagree with that interpretation. *See Edahi*, 2025 WL 3466682, at *11 ("Reading the statute as Sandoval does, would therefore have 'two separate clauses' preforming the 'same work.'" (quoting *United States v. Taylor*, 596 U.S. 845, 857 (2022))).

Finally, pertinent legislative history reinforces the Court's conclusion. *See Loper Bright*, 603 U.S. at 386 ("[T]he longstanding practice of the Government—like any other interpretive aid—can inform [a court's] determination of what the law is."). Enacted in 1952, the INA "distinguished between aliens physically arriving in the United States and those who had entered the Country." Library of Congress, *Immigration Detention: A Legal Overview*, (Sep. 16, 2019), https://www.congress.gov/crs-product/R45915#_Ref17891326. In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") which focused on whether the noncitizen "had been lawfully admitted into the country by immigration authorities." *Id.* Since the IIRIRA's enactment "the statutory framework governing detention has largely remained constant." *Id.* In applying the INA to detention proceedings, the Government has, for the past thirty years, consistently applied § 1226(a). It was not until July of 2025 when DHS/ICE announced a new policy, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" where it deemed all persons who entered the

United States without inspection "applicants for admission" under § 1225, that the Government changed course. U.S. Customs and Border Protection, *Detention of Applicants for Admission*, (Sep. 18, 2025) https://www.cbp.gov/document/foia-record/detention-applicants-admission; *see also Lopez-Campos*, WL 2496379 at *5 ("For the past 30 years, the Government has applied Section 1226(a)[.]" It is only "now that . . . they want the Court to declare that the application of Section 1226(a) is incorrect."). This sudden change contradicted the long-established understanding that § 1225(b) "applies primarily to aliens seeking entry into the United States" while § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 298, 303; *see also id.* at 288 ("Section 1226(a) sets out the default rule for those aliens [already present in the United States.]"). Therefore, the INA's legislative history reflects a longstanding practice of applying § 1226(a) to noncitizens already residing in the country.

"The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework … for noncitizens who are already in the country and facing removal." *Lopez-Campos*, 2025 WL 2496397, at *5. Therefore, the Court finds that Ichich Xo is not subject to § 1225(b)(2)(A). Rather, the facts of the case make clear that he falls under § 1226(a). Accordingly, his Petition requesting bond, or in the alternative, a hearing, is **granted**.

### D. Due Process

Because the Court has concluded that § 1226(a) is the appropriate statutory framework to apply to Ichich Xo, the Court must now determine whether his current detention violates his due process rights.

17

The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. Amend. V.  The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status.  *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))).  To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

It is undisputed that Ichich Xo has a cognizable private interest in avoiding detention without an opportunity for a bond hearing.  *See Hamdi*, 542 U.S. at 531 (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]").  Second, the risk of erroneous deprivation of that interest is high if he is not afforded a detention hearing.  *See Edahi*, 2025 WL 3466682, at *14 (holding that detention "without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest") (citation omitted).  As to the third factor, Respondents have not put forth any argument whatsoever advocating for the United States' interest.  The Court, on its own, concludes that the United States likely has a strong interest in immigration proceedings, but certainly, the "existing statutory and regulatory safeguards" which this Court

discussed at length about above, "serve the governmental interest in public safety." *Barrera*, 2025 WL 2690565, at *7 (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025)). Accordingly, all three factors weigh in favor of Ichich Xo. As other courts have concluded, Ichich Xo's detention without a bond hearing violates the due process rights afforded to him by the Fifth Amendment and he is therefore entitled to an individualized custody determination.

### E.  Attorney's Fees and Costs

Petitioner also seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Doc. # 1 ¶ 35). That statute provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B). The Court will consider an application requesting reasonable fees and costs under the EAJA that is filed in conformity with the procedures set forth in that statute. *See also* Local Rule 83.11(a) (stating that motions for fees under the EAJA "are governed by the procedures set forth in that Act at 28 U.S.C. § 2412(d)"). That request is denied at this juncture.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    Petitioner's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)    Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide him with a **bond hearing** under 8 U.S.C. 1226(a) **within seven (7) days of the date of this order**; and

(3)    Respondents shall file a Status Report with this Court **on or before December 24, 2025**, to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 17th day of December, 2025.



Signed By:

_David L. Bunning_  DB

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2025\25-176 MOO re Habeas Petition.docx